**EXHIBIT C**

# Forensic Mortgage Audit

Prepared For:

Name:    Allison Straker

Address:  506 Skyline Drive
          Blakeslee, PA  18610

Loan number: 325394096

# Forensic Mortgage Audit

The information provided in this report is data compiled and calculated based upon lending industry standards. Interpretation of data and results may vary but are within the acceptable lending industry tolerances.

## GUARANTEE

**We will audit missing paperwork within 30 days of the initial audit delivery free of charge.  Additionally, you may contact the Auditor to answer any question you may have with respect to the audit.**

**Finally if you retain the services of our Law Firm you will receive a credit for the full price of you audit.**

2

# Summary of the Mortgage Transaction

This loan is not current

The loan is in foreclosure

Hearing is scheduled for February 23rd, 2009

The property is the primary residence.

The borrower is acting Pro Se.

The current situation is Long term (over 6 months).

The borrower has contacted the lender/servicer regarding concerns about the loan.

This mortgage is a first lien loan for a new purchase with a new lender

20% subordinate financing was used for a 100% subprime loan.

The lender does not collect impounds.

# Mortgage Document Checklist

| Document | Supplied by |
| --- | --- |
| Mortgage Application (FNMA I003) or Uniform | YES |
| Residential Loan Application, from your closing) | YES |
| HUD-I/ Settlement Statement and Addendums from your clos- | YES |
| Good Faith Estimate | YES |
| Promissory Note | YES |
| Mortgage Note Addendum or Modification | YES |
| Mortgage / Deed of Trust / Security Instrument | YES |
| Truth In Lending Disclosure (Given at Application) | YES |
| Truth In Lending Disclosure (Given at Closing) | YES |
| Affiliated Business Arrangement Disclosure | NO |
| Title Policy or Title Commitment | NO |
| Survey or Platt | NO |
| Property Appraisal | YES |
| Additional Documents for Refinance Transactions | NA |
| Right of Rescission Notice or Right to Cancel (if applicable) | NA |
| High Cost Mortgage Disclosures (if applicable) | NA |
| Previous Mortgage Note | NA |
| Previous HUD-I Settlement Statement and Addendums from | NA |
| Mortgage Servicing Documents | YES |
| Most Recent Mortgage Statement | YES |
| Escrow Analysis (if applicable) | NA |
| Servicing Transfer Notice (if applicable) | YES |
| Collection Notice (if applicable) | YES |
|  |  |
|  |  |

4

# Summary of Violations Found

Ms. Straker was sold a subprime loans that adjusts every 6 months that is amortized over 30 years. A prepayment penalty equal to 6 months of interest is due if the loan balance is reduced by more than 20% in the first 2 years.

Deutsche Bank National Trust filed a foreclosure action on May 2nd, 2007. Deutsche Bank National Trust was not assigned the mortgage and note until June 19th, 2007.

The assignment from Mortgage Electronic Registration Systems (MERS) to Deutsche Bank as Trustee, dated June 19th, 2007 purports to assign the mortgage and promissory note however there is no record of an assignment of the note to MERS and there is no mention of MERS in the language of the note itself.

The assignment fails to state the entity that Deutsche Bank is the trustee for.

Penn America Mortgage failed to deliver a Good Faith Estimate (GFE) until closing.  Mrs. Straker asserts Pen America Mortgage forged her signature on several documents to comply with RESPA disclosure requirements.  The GFE in the file is unsigned.

Penn American Mortgage failed to disclose the Yield Spread Premium (YSP of $2,883.00 until closing.

Penn American Mortgage failed to disclose a broker fee of $5,855.00 until closing.

---

1. All documents provided for the audit are treated as if they are true and correct representations of the final original mortgage loan documents.
2. The audit scope is limited to the documents provided and results are based solely on the documents provided.

# Summary of Violations Continued

HomeEq Servicing failed to respond to Mrs. Strikers QWR dated 2/18/2008.

There are two complete Truth in Lending Disclosure Statements in the file with differing payment terms.

GFE signature is a forgery according to Ms. Straker

A hearing is scheduled for February 23rd, 2009

I could not access the online Registry of Deeds. I highly recommend obtaining copies at the courthouse of all recorded instruments from 5/2/2006 to present.

6

# Mortgage Transaction Participants

Borrower: Allison Straker     Address: 506 Skyline Drive
               Blakeslee, PA  18610

Loan Originator: Penn American Mortgage  Address: 35 Crystal Street
               East Stroudsburg, PA 18301

Lender:   Freemont Investment & Loan Address: P.O. Box 14242
   (assigned to Deutsche Bank as trustee)  Orange, CA 92863

Loan Servicer:  HomeEq Servicing   Address: 4837 Watt Avenue, Ste. 200
               North Highlands, CA  95660

Settlement Agent: Fidelity Home Abstract  Address: 3 Landmark Center
               East Stroudsburg, PA  18301

Title Company:  Same as above    Address: Same as above

Seller:   Henry & Jadwiga Plonski  Address: 27 Fawn View Road
               Broadheadsville, PA  18322

# Loan Data

| | |
|---|---|
| **Loan Number** | **325394096** |
| **Property Type** | **Single Family Residence** |
| **Occupancy Status** | **Owner Occupied** |
| **Loan Purpose** | **New Purchase** |
| **Amortization Type** | **Adjustable rate based on 6 month LIBOR** |
| **Lien Position** | **First** |
| **Index** | **6 month LIBOR** |
| **Loan Amount** | **$144,160** |
| **Term** | **30 years** |
| **Note Rate** | **10.050%** |
| **LTV** | **80%** |
| **Subordinate financing** | **20% ($35,176.06)** |

# Mortgage Loan Compliance Review

**RESPA LAW TEST**

## Up charges on third party fees rebated?

RESPA 3500.14( c ) No split of charges except for actual services per-
formed. No person shall give and no person shall accept any portion, split,
or percentage of any charge made or received for the rendering of a set-
tlement service in connection with a transaction involving a federally re-
lated mortgage loan other than for services actually performed. A charge
by a person for which no or nominal services are performed or for which
PASS duplicative fees are charged is an unearned fee and violates this sec-
tion. The source of the payment does not determine whether or not a ser-
vice is compensable. Nor may the prohibitions of this part be avoided by
creating an arrangement wherein the purchaser of services splits the fee.

**FAIL**

## RESPA 3500.7(c)HUD-I Broker / 3rd party fees compared to GFE reasonable?

RESPA 3500.7 (c) Content of good faith estimate. A good
faith estimate consists of an estimate, as a dollar amount or
range, of each charge which:
(1) Will be listed in section L of the HUD-1 or HUD-1A in accordance with
the instructions set forth in Appendix A to this part; and
(2) That the borrower will normally pay or incur at or before settlement
based upon common practice in the locality of the mortgaged property.
Each such estimate must be made in good faith and bear a reasonable
PASS relationship to the charge a borrower is likely to be required to pay
at settlement, and must be based upon experience in the locality of the
mortgaged property. As to each charge with respect to which the lender
requires a particular settlement service provider to be used, the lender
shall make its estimate based upon the lender's knowledge of the
amounts charged by such provider.

**FAIL**

## Lender fees paid to Lender not Broker?

RESPA 3500.14( c ) No split of charges except for actual services per-
formed. No person shall give and no person shall accept any portion, split,
or percentage of any charge made or received for the rendering of a set-
tlement service in connection with a transaction involving a federally re-
lated mortgage loan other than for services actually performed. A charge
by a person for which no or nominal services are performed or for which
duplicative fees are charged is an unearned fee and violates this section.
The source of the payment does not determine whether or not a service is
compensable. Nor may the prohibitions of this part be avoided by creating
an arrangement wherein the purchaser of services splits the fee.

**FAIL**

## HUD-I disclosed all closing costs paid outside of closing (POC)?

RESPA 3500.8(a) Use by settlement agent. The settlement agent shall use the HUD-1 settlement statement in every settlement involving a federally related mortgage loan in which there is a borrower and a seller. For transactions in which there is a borrower and no seller, such as refinancing loans or subordinate lien loans, the HUD--1 may be utilized by using the borrower's side of the HUD--1 statement. (b) Charges to be stated. The settlement agent shall complete the HUD--1 or HUD--1A in accordance with the instructions set forth in Appendix A to this part.

**PASS**

## If Yield Spread Premium paid to broker was it accurately disclosed?

RESPA 3500.7 (c) Content of good faith estimate. A good faith estimate consists of an estimate, as a dollar amount or range, of each charge which:
(1) Will be listed in section L of the HUD--1 or HUD--1A in accordance with the instructions set forth in Appendix A to this part

**FAIL**

## Is initial GFE in file?

RESPA 3500.7(b) Mortgage broker to provide. In the event an application is received by a mortgage broker who is not an exclusive agent of the lender, the mortgage broker must provide a good faith estimate within three days of receiving a loan application based on his or her knowledge of the range of costs (a suggested format is set forth in Appendix C of this part). As long as the mortgage broker has provided the good faith estimate, the funding lender is not required to provide an additional good faith estimate, but the funding lender is responsible for ascertaining that the good faith estimate has been delivered. If the application for mortgage credit is denied before the end of the three-business-day period, the mortgage broker need not provide the denied borrower with a good faith estimate.

**FAIL**

## GFE signed & dated or evidence of delivery within 3 days?

RESPA 3500.7(b) Mortgage broker to provide. In the event an application is received by a mortgage broker who is not an exclusive agent of the lender, the mortgage broker must provide a good faith estimate within three days of receiving a loan application based on his or her knowledge of the range of costs (a suggested format is set forth in Appendix C of this part). As long as the mortgage broker has provided the good faith estimate, the funding lender is not required to provide an additional good faith estimate, but the funding lender is responsible for ascertaining that the good faith estimate has been delivered. If the application for mortgage credit is denied before the end of the three-business-day period, the mortgage broker need not provide the denied borrower with a good faith estimate.

**FAIL**

## Servicing Transfer Disclosure in File?

RESPA 3500.21(b) Servicing Disclosure Statement and Applicant Acknowledgement; requirements. (1) At the time an application for a mortgage servicing loan is submitted, or within 3 business days after submission of the application, the lender, mortgage broker who anticipates using table funding, or dealer who anticipates a first lien dealer loan shall provide to each person who applies for such a loan a Servicing Disclosure Statement

**PASS**

## Evidence of delivery & completed correctly?

RESPA 3500.21(b) Servicing Disclosure Statement and Applicant Acknowledgement; requirements. (1) At the time an application for a mortgage servicing loan is submitted, or within 3 business days after submission of the application, the lender, mortgage broker who anticipates using table funding, or dealer who anticipates a first lien dealer loan shall provide to each person who applies for such a loan a Servicing Disclosure Statement

**FAIL**

## If required 3rd Party Provider, was Disclosure in file?

RESPA 3500.7 (e) Particular providers required by lender. (1) If the lender requires the use (see § 3500.2, ""required use") of a particular provider of a settlement service, other than the lender's own employees, and also requires the borrower to pay any portion of the cost of such service, then the good faith estimate must: (i) Clearly state that use of the particular provider is required and that the estimate is based on the charges of the designated provider; (ii) Give the name, address, and telephone number of each provider; and (iii) Describe the nature of any relationship between each such provider and the lender. Plain English references to the relationship should be utilized, e.g., "X is a depositor of the lender," "X is a borrower from the lender," "X has performed 60% of the lender's settlements in the past year." (The lender is not required to keep detailed records of the percentages of use. Similar language, such as "X was used [regularly] [frequently] in our settlements the past year" is also sufficient for the purposes of this paragraph.) In the event that more than one relationship exists, each should be disclosed.

FAIL

## RESPA 3500.15 If Affiliated Business, was Disclosure in file?

RESPA 3500.15 (1) Prior to the referral, the person making a referral has provided to each person whose business is referred a written disclosure, in the format of the Affiliated Business Arrangement Disclosure Statement set forth in Appendix D of this part. This disclosure shall specify the nature of the relationship (explaining the ownership and financial interest) between the person performing settlement services (or business incident thereto) and the person making the referral, and shall describe the estimated charge or range of charges (using the same terminology, as far as practical, as Section L of the HUD--1 or HUD--1A settlement statement) generally made by the provider of settlement services. The disclosure must be provided on a separate piece of paper no later than the time of each referral or, if the lender requires the use of a particular provider, the time of loan application

PASS

# RESPA Servicing Law

## Did the bank, as transferor, or as transferee notify the borrower at least 15 days in advance of transfer with the notice of transfer?

RESPA 3500.21(d) (2) Time of notice. (i) Except as provided in paragraph (d)(2)(ii) of this section:
(A) The transferor servicer shall deliver the Notice of Transfer to the borrower not less than 15 days before the effective date of the transfer of the servicing of the mortgage servicing loan;
(B) The transferee servicer shall deliver the Notice of Transfer to the borrower not more than 15 days after the effective date of the transfer; and
(C) The transferor and transferee servicers may combine their notices into one notice, which shall be delivered to the borrower not less than 15 days before the effective date of the transfer of the servicing of the mortgage servicing loan.

NA

## No late fees imposed and no payments treated as late within 60 days following a transfer of servicing

RESPA 3500.21(d) (5) Consumer protection during transfer of servicing. During the 60-day period beginning on the effective date of transfer of the servicing of any mortgage servicing loan, if the transferor servicer (rather than the transferee servicer that should properly receive payment on the loan) receives payment on or before the applicable due date (including any grace period allowed under the loan documents), a late fee may not be imposed on the borrower with respect to that payment and the payment may not be treated as late for any other purposes.

NA

## Notice of receipt of inquiry for qualified written correspondence from borrowers within 20 business days (unless the action requested is taken within that period and the borrower is notified in writing of that action)

RESPA 3500.21(e) Duty of loan servicer to respond to borrower inquiries.
(1) Notice of receipt of inquiry. Within 20 business days of a servicer of a mortgage servicing loan receiving a qualified written request from the borrower for information relating to the servicing of the loan, the servicer shall provide to the borrower a written response acknowledging receipt of the qualified written response. This requirement shall not apply if the action requested by the borrower is taken within that period and the borrower is notified of that action in accordance with the paragraph (f)(3) of this section. By notice either included in the Notice of Transfer or separately delivered by first-class mail, postage prepaid, a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests.

PASS

13

**Provide, not later than 60 business days after receipt of the qualified written correspondence from the borrower, written notification of the corrections taken on the account, or statement of the reasons the account is correct or explanation of why the information requested is unavailable.**

RESPA3500.21(e) (3) Action with respect to the inquiry. Not later than 60 business days after receiving a qualified written request from the borrower, and, if applicable, before taking any action with respect to the inquiry, the servicer shall: (i) Make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of the correction. This written notification shall include the name and telephone number of a representative of the servicer NOT TESTED who can provide assistance to the borrower; or (ii) After conducting an investigation, provide the borrower with a written DOCUMENT(S) NOT explanation or clarification that includes: PROVIDED. (A) To the extent applicable, a statement of the servicer's reasons for concluding the account is correct and the name and telephone number of an employee, office, or department of the servicer that can provide assistance to the borrower; or (B) Information requested by the borrower, or an explanation of why the information requested is unavailable or cannot be obtained by the servicer, and the name and telephone number of an employee, office, or department of the servicer that can provide assistance to the borrower. .

FAIL

**Does not provide information to any consumer reporting agency on overdue payment when investigating a qualified written request from borrower about disputed payments during this 60-business-day period.**

RESPA3500.21(e)(4) Protection of credit rating. (i) During the 60-business day period beginning on the date of the servicer receiving from a borrower NOT TESTED a qualified written request relating to a dispute on the borrower's payments, a servicer may not provide adverse information regarding any DOCUMENT(S) NOT payment that is the subject of the qualified written request to any PROVIDED. consumer reporting agency (as that term is defined in section 603 of the Fair Credit Reporting Act, 15 U.S.C. 1681a).

NA

# Respa Escrow Accounts

## Did the lender perform an escrow analysis at the creation of the account ( Did it contain: a. Amount of monthly mortgage payments? b. Portion of payment going into escrow? c. Charges to be paid from the escrow account during the first 12 months after the account is established? d. Disbursement dates? e. Amount of cushion? f. Trial running balance?

RESPA 3500.17(c) (2) Escrow analysis at creation of escrow account. Before establishing an escrow account, the servicer must conduct an escrow account analysis to determine the amount the borrower must deposit into the escrow account (subject to the limitations of paragraph (c)(1)(i) of this section), and the amount of the borrower's periodic payments into the escrow account (subject to the limitations of (c)(1)(ii) of this section). In conducting the escrow account analysis, the servicer must estimate the disbursement amounts according to paragraph (c)(7) of this section. Pursuant to paragraph (k) of this section, the servicer must use a date on PASS or before the deadline to avoid a penalty as the disbursement date for the escrow item and comply with any other requirements of paragraph (k) of this section. Upon completing the initial escrow account analysis, the servicer must prepare and deliver an initial escrow account statement to the borrower, as set forth in paragraph (g) of this section. The servicer must use the escrow account analysis to determine whether a surplus, shortage, or deficiency exists and must make any adjustments to the account pursuant to paragraph (f) of this section.

NA

## Did the borrower receive an initial escrow statement within 45 days after the escrow account was established

RESPA 3500.17 (g) Initial Escrow Account Statement. (1) Submission at settlement, or within 45 calendar days of settlement. As noted in § 3500.17(c) (2), the servicer shall conduct an escrow account analysis before establishing an escrow account to determine the amount the borrower shall deposit into the escrow account, subject to the limitations of § 3500.17(c) PASS (1) (i). After conducting the escrow account analysis for each escrow account, the servicer shall submit an initial escrow account statement to the borrower at settlement or within 45 calendar days of settlement for escrow accounts that are established as a condition of the loan.

NA

15

**Was the statement accurate within tolerances.**

RESPA 3500.17(c) (5) Cushion. For post-rule accounts, the cushion shall be no greater than one-sixth (1/6) of the estimated total annual disbursements from the escrow account using aggregate analysis PASS accounting. For pre-rule accounts, the cushion may not exceed the total of one-sixth of the estimated annual disbursements for each escrow account item using single-item analysis accounting. In determining the cushion using single-item analysis, a servicer shall not divide an escrow account item into sub-accounts, even if the payee requires installment payments.                                                                 NA

# Truth in Lending Act

## If ARM, was CHARM Disclosure made? (Consumer Handbook on ARMs)

TILA 226.19 (b) Certain variable-rate transactions. 45a If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a nonrefundable fee, whichever is earlier: 45b                                                                                                               FAIL

(1) The booklet titled Consumer Handbook on Adjustable Rate Mortgages published by the Board and the Federal Home Loan Bank Board, or a suitable substitute.

(2) A loan program disclosure for each variable-rate program in which the consumer expresses an interest.

## Is initial TIL in the file?

TILA 226.19 (a) Residential mortgage transactions subject to RESPA.--(1) Time of disclosures. In a residential mortgage transaction subject to the Real Estate Settlement Procedures Act (12 U.S.C. 2601 et seq.) the creditor shall make good faith estimates of the disclosures required by § 226.18 before consummation, or shall deliver or place them in the mail not later than three business days after the creditor receives the consumer's written application, whichever is earlier.                                                                                                          FAIL

16

## TIL signed & dated or evidence of delivery within 3 days?

TILA 226.19 (a) Residential mortgage transactions subject to RESPA.--(1)
Time of disclosures. In a residential mortgage transaction subject to the Real
Estate Settlement Procedures Act (12 U.S.C. 2601 et seq.) the creditor shall                    FAIL
make good faith estimates of the disclosures required by § 226.18 before
consummation, or shall deliver or place them in the mail not later than three
business days after the creditor receives the consumer's written application,
whichever is earlier.

## FINAL TIL complete?

TILA 226.18 (i) Demand feature. If the obligation has a demand feature,
that fact shall be disclosed. When the disclosures are based on an assumed
maturity of 1 year as provided in § 226.17(c)(5), that fact shall also be dis-
closed. (j) Total sale price. In a credit sale, the "total sale price," using that
term, and a descriptive explanation (including the amount of any downpay-
ment) such as "the total price of your purchase on credit, including your
downpayment of $ ." The total sale price is the sum of the cash price, the
items described in paragraph (b)(2), and the finance charge disclosed under
paragraph (d) of this section.
(k) Prepayment. (1) When an obligation includes a finance charge computed
from time to time by application of a rate to the unpaid principal balance, a
statement indicating whether or not a penalty may be imposed if the obliga-
tion is prepaid in full. {{12-31-07 p.6665}}
(2) When an obligation includes a finance charge other than the finance
charge described in paragraph (k)(1) of this section, a statement indicating
whether or not the consumer is entitled to a rebate of any finance charge if
the obligation is prepaid in full.
(l) Late payment. Any dollar or percentage charge that may be imposed be-          FAIL
fore maturity due to a late payment, other than a deferral or extension
charge.
(m) Security interest. The fact that the creditor has or will acquire a security
interest in the property purchased as part of the transaction, or in other
property identified by item or type.
(n) Insurance and debt cancellation. The items required by § 226.4(d) in or-
der to exclude certain insurance premiums and debt cancellation fees from
the finance charge.
(o) Certain security interest charges. The disclosures required by § 226.4(e)
in order to exclude from the finance charge certain fees prescribed by law or
certain premiums for insurance in lieu of perfecting a security interest.
(p) Contract reference. A statement that the consumer should refer to the
appropriate contract document for information about nonpayment, default,
the right to accelerate the maturity of the obligation, and prepayment re-
bates and penalties. At the creditor's option, the statement may also include
a reference to the contract for further information about security interests
and, in a residential mortgage transaction, about the creditor's policy re-
garding assumption of the obligation.

17

**Continued....**

(q) Assumption policy. In a residential mortgage transaction, a statement whether or not a subsequent purchaser of the dwelling from the consumer may be permitted to assume the remaining obligation on its original terms.
(r) Required deposit. If the creditor requires the consumer to maintain a deposit as a condition of the specific transaction, a statement that the annual percentage rate does not reflect the effect of the required deposit.

## APR within tolerance?

TILA 226.22 (a)  (a)  Accuracy of annual percentage rate.  (1)  The annual percentage rate is a measure of the cost of credit, expressed as a yearly rate, that relates the amount and timing of value received by the consumer to the amount and timing of payments made. The annual percentage rate shall be determined in accordance with either the actuarial method or the United States Rule method. Explanations, equations and instructions for determining the annual percentage rate in accordance with the actuarial method are set forth in appendix J to this regulation. [45d]
(2)  As a general rule, the annual percentage rate shall be considered accurate if it is not more than 1/8 of 1 percentage point above or below the annual percentage rate determined in accordance with paragraph (a)(1) of this section.

PASS

## IF APR within tolerance, were Finance Charges within tolerance?

226.18 (d) Finance charge. The finance charge, using that term, and a brief description such as "the dollar amount the credit will cost you."
(1) Mortgage loans. In a transaction secured by real property or a dwelling, the disclosed finance charge and other disclosures affected by the disclosed finance charge {{12-31-07 p.6664}}(including the amount financed and the annual percentage rate) shall be treated as accurate if the amount disclosed as the finance charge:
(i) is understated by no more than $100; or
(ii) is greater than the amount required to be disclosed.

PASS

## Is a demand feature disclosed, if applicable?

TILA 226.18(i) Demand feature. If the obligation has a demand feature, that fact shall be disclosed. When the disclosures are based on an assumed maturity of 1 year as provided in § 226.17(c)(5), that fact shall also be disclosed.

PASS

18

**An historical example of the maximum interest rate and payment (ARM Loans)**

TILA 226.19(b)(2) (viii) At the option of the creditor, either of the following:
(A) A historical example, based on a $10,000 loan amount, illustrating how payments and the loan balance would have been affected by interest rate changes implemented according to the terms of the loan program disclosure. The example shall reflect the most recent 15 years of index values. The example shall reflect all significant loan program terms, such as negative amortization, interest rate carryover, interest rate discounts, and interest rate and payment limitations, that would have been affected by the index movement during the period.
(B) The maximum interest rate and payment for a $10,000 loan originated at the initial interest rate (index value plus margin, adjusted by the amount of any discount or premium) in effect as of an identified month and year for the loan program disclosure assuming the maximum periodic increases in rates and payments under the program; and the initial interest rate and payment for that loan and a statement that the periodic payment may increase or decrease substantially depending on changes in the rate.

PASS

# TILA REFINANCE LAWS

**Were two copies of Right of Rescission furnished to each person entitled to rescind?**

NA

TILA 226.23(b)(1) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered in electronic form in accordance with the consumer consent and other applicable provisions of the E-Sign Act).

**The date the rescission period expires correct?**

NA

TILA 226.23(b)(1) (v) The date the rescission period expires.

**The consumer's right to rescind**

NA

TILA 226.23(b)(1)(ii) The consumer's right to rescind the transaction.

19

## How to exercise the right to rescind

TILA 226.15(b)(1) (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

NA

## Was funding delayed until the rescission period expired?

TILA 226.15(c) Delay of creditor's performance. Unless a consumer waives the right of rescission under paragraph (e) of this section, no money shall be disbursed other than in escrow, no services shall be performed and no materials delivered until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded.

NA

## TILA HIGH-COST LOAN LAWS (226.32) Does the consumer's principal dwelling secure the loan?

TILA 226.2(a)(1◆) Dwelling means a residential structure that contains one to four units, whether or not that structure is attached to real property. The term includes an individual condominium unit, cooperative unit, mobile home, and trailer, if it is used as a residence.

NA

## Residential Mortgage Transaction?

TILA 226.2(a)(24) Residential mortgage transaction means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained in the consumer's principal dwelling to finance the acquisition or initial construction of that dwelling.

NA

## Treasury Security Yield of Comparable Maturity

TILA 226.32(a)(1) (i) The annual percentage rate at consummation will exceed by more than 8 percentage points for first-lien loans, or by more than 10 percentage points for subordinate-lien loans, the yield on Treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor

NA

## Finance Charges TEST

(a) Definition. The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

(1) Charges by third parties. The finance charge includes fees and amounts charged by someone other than the creditor, unless otherwise excluded under this section, if the creditor:

(i) requires the use of a third party as a condition of or an incident to the extension of credit, even if the consumer can choose the third party; or

(ii) retains a portion of the third-party charge, to the extent of the portion retained.

(2) Special rule; closing agent charges. Fees charged by a third party that conducts the loan closing (such as a settlement agent, attorney, or escrow or title company) are finance charges only if the creditor:

(i) Requires the particular services for which the consumer is charged;

(ii) Requires the imposition of the charge; or

(iii) Retains a portion of the third-party charge, to the extent of the portion retained.

PASS

(3) Special rule; mortgage broker fees. Fees charged by a mortgage broker (including fees paid by the consumer directly to the broker or to the creditor for delivery to the broker) are finance charges even if the creditor does not require the consumer to use a mortgage broker and even if the creditor does not retain any portion of the charge.

(b) Example of finance charge. The finance charge includes the following types of charges, except for charges specifically excluded by paragraphs (c) through (e) of this section:

(1) Interest, time price differential, and any amount payable under an add-on or discount system of additional charges.

(2) Service, transaction, activity, and carrying charges, including any charge imposed on a checking or other transaction account to the extent that the charge exceeds the charge for a similar account without a credit feature.

(3) Points, loan fees, assumption fees, finder's fees, and similar charges.

(4) Appraisal, investigation, and credit report fees.

(5) Premiums or other charges for any guarantee or insurance protecting the creditor against the consumer's default or other credit loss.

(6) Charges imposed on a creditor by another person for purchasing or accepting a consumer's obligation, if the consumer is required to pay the charges in cash, as an addition to the obligation, or as a deduction from the proceeds of the obligation.

**Finance charges Test continued....**

(7) Premiums or other charges for credit life, accident, health, or loss-of-income insurance, written in connection with a credit transaction.

(8) Premiums or other charges for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property, written in connection with a credit transaction.

(9)Discounts for the purpose of inducing payment by a means other than the use of credit.

(10) Debt cancellation fees. Charges or premiums paid for debt cancellation coverage written in connection with a credit transaction, whether or not the debt cancellation coverage is insurance under applicable law.

# FACTA LAW

## Is a complete FACTA Disclosure in file?

(D) NOTICE TO HOME LOAN APPLICANTS.--A copy of the following notice, which shall include the name, address, and telephone number of each consumer reporting agency providing a credit score that was used: NOTICE TO THE HOME LOAN APPLICANT In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores. The credit score is a computer generated summary calculated at the time of the request and based on information that a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change. Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another. If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application. If you have questions concerning the terms of the loan, contact the lender.

PASS