## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALLISON STRAKER,

    Plaintiff,

    v.

DEUTSCHE BANK NATIONAL TRUST,
as Trustee, *et al.*,

    Defendants.

CIVIL ACTION NO. 3:09-CV-338

(JUDGE CAPUTO)

(MAGISTRATE JUDGE CARLSON)

## **MEMORANDUM**

Presently before the Court are Magistrate Judge Martin C. Carlson's Report and Recommendations ("R&R") to the Motions for Summary Judgment filed by Defendant Fremont Reorganizing Corporation, f/k/a/ Fremont Investment & Loan ("Fremont") (Doc. 73) and Defendants Deutsche Bank National Trust Company, as Trustee ("Deutsche Bank") and HomEq Servicing Corporation ("HomEq") (Doc. 74). Magistrate Judge Carlson recommends granting both motions. (Docs. 92–93.) Plaintiff Allison Straker timely filed objections to the R&Rs, which the Court has considered. For the following reasons, the Court will adopt the R&Rs and grant the moving Defendants' summary judgment motions.

## **BACKGROUND**

### A. Factual Background

In March 2006, Ms. Straker entered into an agreement of sale to purchase property at 506 Skyline Drive, Blakeslee, Pennsylvania. (Doc. 76 at 3.) She engaged a mortgage broker, Penn American Mortgage Company ("Penn American"), to help her obtain financing to purchase the property. (Straker Dep. at 23:22–25, 26:5–13.) On May 23, 2006, Penn American submitted Ms. Straker's loan application to Fremont, who approved her for two subprime purchase money mortgage loans in the amount of $144,160.00 and $36,040.00. (Doc. 89 at 4; Doc. 76 at 3.)

A closing was held on the loan transaction on June 2, 2006. (Doc. 89 at 11; Doc. 76 at 3.) Although Ms. Straker informed Penn American before the closing that she wanted

a loan with a fixed interest rate, she was never told her that her loan would have a fixed interest rate. (Straker Dep. at 33:12–34:3, 35:2–15.) At some point prior to the closing, Penn American told Ms. Straker that the interest rate on her loan would be 8.50%. (*Id.* at 34:4–7.) At the closing, Ms. Straker signed each of the documents evidencing the two Fremont loans (*Id.* at 44:24–57:25), but neither read nor asked any questions about any of them (*Id.* at 45:14–20, 46:12–15, 51:17–23). Several of those documents—the Adjustable Rate Note, the Adjustable Rate Rider, and the Adjustable Rate Mortgage Loan Program Disclosure—prominently indicated that the loans had an adjustable interest rate with an initial rate of 10.50%. (Doc. 73, Exs. D–F.) Ms. Straker did not speak with Fremont regarding the terms of the loan before or after the closing, nor did Fremont directly communicate with her. (Straker Dep. at 38:13–20, 58:13–60:22.)

Following the closing, Fremont disbursed over $170,000.00 on Ms. Straker's behalf, which she used to purchase the Blakeslee property. (Doc. 73, Ex. B.) The larger of the two mortgage loans, which is the only loan at issue in this action, was later sold and assigned by Fremont, through its nominee, Mortgage Electronic Registration Systems, Inc. ("MERS"), to Barclays Bank PLC in August 2006. (Doc. 76 at 3.) The loan was subsequently assigned to Deutsche Bank in June 2007. (Doc. 74, Ex. 2.) Fremont transferred the servicing rights to the loan to HomeEq in October 2006 and has had no involvement with the loan since then. (Doc. 76 at 4.)

In December 2006, Ms. Straker defaulted on her mortgage obligations. (Straker Dep. at 64:23–65.) She has not made any payments on her loan since 2007. (*Id.* at 65:14–17.) On May 2, 2007, Deutsche Bank commenced a mortgage foreclosure action against Ms. Straker in the Court of Common Pleas of Monroe County, Pennsylvania. (Doc. 23, Ex. B.) On June 17, 2007, the state court entered a default judgment against Ms. Straker in the amount of $161,775.27, issued a writ of execution, and scheduled a sheriff's sale for the Blakeslee property for October 25, 2007. The sale was postponed and subsequently stayed when Ms. Straker filed a Chapter 13 bankruptcy petition with the United States Bankruptcy Court for the Middle District of Pennsylvania on October 10, 2007. *See In re Allison Straker*,

No. 5:07-BK-52636. After the bankruptcy court dismissed her case on January 8, 2008, Ms. Straker again filed a Chapter 13 petition on January 30, 2008.[1] *See In re Allison Straker*, No. 5:08-BK-50260. That case was dismissed on July 8, 2008, and she filed another Chapter 13 petition on February 26, 2009. *See In re Allison Straker*, No. 5:09-BK-1295. Her most recent bankruptcy case was converted to a Chapter 7 proceeding on April 5, 2011, and is still pending before the bankruptcy court.

On February 23, 2009, Ms. Straker commenced this action by filing a *pro se* Complaint against Deutsche Bank, MERS, Fremont, HomEq, Penn American, Fidelity Home Abstract ("Fidelity"),[2] and 1,000 John Doe Defendants. (Doc. 1.) After the Court dismissed Ms. Straker's Complaint without prejudice (Doc. 24), she filed an Amended Complaint on March 16, 2010 (Doc. 27). On April 1, 2010 Deutsche Bank, MERS, and HomEq moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 30.) Fremont also moved to dismiss the Amended Complaint on similar grounds on April 21, 2010. (Doc. 33.) In a Memorandum and Order dated February 3, 2011, the Court granted in part and denied in part the motions to dismiss. (Doc. 50.) Specifically, the Court dismissed all claims against MERS, Ms. Straker's Real Estate Settlement Procedures Act ("RESPA")[3] claims against Fremont and Deutsche Bank, and her Racketeer Influenced and Corrupt Organizations ("RICO")[4] claims. (*Id.*) On February 10, 2011, Fremont filed a crossclaim against Fidelity and Penn American. (Doc. 51.)

On January 15, 2012, Fremont filed a motion for summary judgment.[5] (Doc. 73.)

---

[1] Ms. Straker notes that these two bankruptcy proceedings were an attempt to "make arrangements" with Deutsche Bank regarding the Blakeslee property. (Straker Dep. at 65:18–67:17.)

[2] Neither Fidelity nor Penn American have entered appearances in this matter.

[3] 12 U.S.C. §§ 2601–2617.

[4] 18 U.S.C. § 1964.

[5] Ms. Straker's declaratory judgment, fraudulent inducement, unjust enrichment, and civil conspiracy claims remain against Fremont.

3

Deutsche Bank and HomEq moved for summary judgment the following day.[6] (Doc. 74.) On April 3, 2012, Ms. Straker filed a brief in response to Fremont's summary judgment motion (Doc. 89) and a declaration in response to Deutsche Bank and HomEq's summary judgment motion (Doc. 88).[7] On April 26, 2012, Magistrate Judge Carlson issued a R&R on Fremont's Motion for Summary Judgment (Doc. 92) and a R&R on Deutsche Bank and HomEq's Motion for Summary Judgment (Doc. 93).

**B. The Magistrate Judge's R&Rs**

### 1. R&R on Fremont's Motion for Summary Judgment

Magistrate Judge Carlson recommends that the Court grant summary judgment in Fremont's favor on all claims remaining against it. (Doc. 92 at 5.) He also recommends that the Court grant summary judgment in favor of Fremont on Ms. Straker's common law fraudulent inducement claim because it was brought beyond the applicable two-year statute of limitations and is thus time-barred under Pennsylvania law. (*Id.* at 9–16.) Alternatively, he recommends that summary judgment be entered on the fraudulent inducement claim because Ms. Straker has not adduced any evidence that Fremont made false statements or misrepresentations to her, that she relied on any allegedly false statements, or that Fremont discouraged or prevented her from reviewing the loan documents at the closing. (*Id.* at 16–19.) Similarly, he recommends that Court grant summary judgment in Fremont's favor on Ms. Straker's common law civil conspiracy claim because it is time-barred, or, alternatively, since she has not supplied any evidence in support of it. (*Id.* at 9–16,19–21.)

Magistrate Judge Carlson further recommends that the Court grant Fremont

---

[6] Deutsche Bank is not mentioned or identified in any of Ms. Straker's remaining claims. The only remaining claim against HomEq is a RESPA claim pursuant to 12 U.S.C. § 2605(e).

[7] The declaration does not address the summary judgment arguments made by Deutsche Bank and HomEq. Rather, it challenges the foreclosure judgment obtained by Deutsche Bank as void on the grounds that she was not personally served (Doc. 88 at ¶ 4) and Deutsche Bank lacked standing to sue (*Id.* at ¶¶ 12–15).

4

summary judgment on Ms. Straker's unjust enrichment claim, as she has not pointed to any evidence to support the claim, which is also unavailable due to her undisputed contractual relationship with Fremont. (*Id.* at 22–24.) Finally, he recommends that summary judgment be entered in Fremont's favor on Ms. Straker's declaratory judgment claim because her substantive claims against Fremont fail as a matter of law and she has not supported this claim with evidence. (*Id.* at 24–27.)

### 2. R&R on Deutsche Bank and HomEq's Motion for Summary Judgment

Magistrate Judge Carlson also recommends that the Court grant summary judgment in favor of Deutsche Bank and HomEq on all of Ms. Straker's claims because she has not made an argument in opposition to their summary judgment motion, or, alternatively, because her claims fail as a matter of law. (Doc. 93 at 13–14.) He recommends that summary judgment be entered in HomEq's favor on Ms. Straker's RESPA claim because she has not presented evidence of damages that are causally linked to HomEq's alleged failure to timely respond to her qualified written request. (*Id.* at 22–26.) Additionally, he recommends that summary judgment be entered in Deutsche Bank's favor on Ms. Straker's declaratory judgment, fraudulent inducement, unjust enrichment, and civil conspiracy claims because it is undisputed that they "relate entirely to events predating the assignment of this mortgage to Deutsche Bank," who took the mortgage free and clear of all claims and defenses under Pennsylvania law as a holder in due course. (*Id.* at 14–16.) Magistrate Judge Carlson also declined to address the merits of Ms. Straker's declaration, which challenges the judgment obtained by Deutsche Bank in its state court mortgage foreclosure action, pursuant to the *Rooker–Feldman* doctrine. (*Id.* at 17–21.)

### C. Objection

Ms. Straker timely filed objections to Magistrate Judge Carlson's R&Rs on May 15, 2012. (Doc. 94.) In her objections, Ms. Straker contends that the 2007 state court mortgage foreclosure judgment entered against her is void and should be stricken. (*Id.* at 2–5.) The gravamen of her argument is that because Deutsche Bank did not possess a valid assignment of the mortgage when it commenced the mortgage foreclosure action, it

5

was not the real party in interest and did not have standing to sue her. (*Id.* at 2–7.) Ms. Straker contends that as a result, the state court was without jurisdiction to enter judgment in favor of Deutsche Bank and against her in that action. (*Id.* at 5–7.) She invites the Court to vacate the judgment and believes that the *Rooker–Feldman* doctrine does not prevent the Court from doing so in this instance. (*Id.* at 3–5.)

## **LEGAL STANDARDS**

### A. Standard for Reviewing a Report and Recommendation

Where objections to the Magistrate Judge's report are filed, the court must conduct a *de novo* review of the contested portions of the report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n. 3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)). However, this only applies to the extent that a party's objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984). In conducting a *de novo review*, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76, (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M. D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); Goney, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F.Supp. 375, 376–77 (M.D. Pa. 1998). As such, the Court reviews the portions of the R&R to which the plaintiff objects *de novo*. The remainder of the R&R is reviewed for clear error.

### B. Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

6

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727 (2d ed.1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). And, "[t]o defeat summary judgment, [the non-moving party] 'cannot rest simply on the allegations in the pleadings,' but 'must rely on affidavits, depositions, answers to interrogatories, or

7

admissions on file.'" *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 199 (3d Cir. 2001) (quoting *Bhatla v. U.S. Capital Corp.*, 990 F.2d 780, 787 (3d Cir. 1993)); *see also Tilden Fin. Corp. v. Palo Tire Serv., Inc.*, 596 F.2d 604, 608 (3d Cir. 1979).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

Although Ms. Straker makes a number of arguments in her objections to the R&Rs, none respond to the recommendations made by Magistrate Judge Carlson, address the summary judgment arguments made by the moving Defendants, or relate to the causes of action in her Amended Complaint. Instead, she contends that the 2007 mortgage foreclosure default judgment entered against her is void, as Deutsche Bank lacked standing to sue and the state court lacked jurisdiction, and should be stricken by the Court. (Doc. 94 at 2–5.) Her objections, which are irrelevant to the substance of the R&Rs and this action, will not be addressed by the Court. Having reviewed both R&Rs for clear error or manifest injustice and finding none, the Court will adopt Magistrate Judge Carlson's recommendations and grant the moving Defendants' summary judgment motions. Accordingly, summary judgment will be entered in favor or Fremont, Deutsche Bank, and HomEq on all of Ms. Straker's claims against them.

## CONCLUSION

For the above stated reasons, the Magistrate Judge's Report and Recommendations

8

(Docs. 92–93) will be adopted and the summary judgment motions of Fremont (Doc. 73) and Deutsche Bank and HomEq (Doc. 74) will be granted.

An appropriate order follows.

March 28, 2013  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge