# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALLISON STRAKER,** | : | CIVIL NO. 3:09-CV-338 |
| | : | |
| **Plaintiff,** | : | **(Judge Caputo)** |
| | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **DEUTSCHE BANK NATIONAL TRUST, et al.,** | : | |
| | : | |
| **Defendants,** | : | |

## REPORT AND RECOMMENDATION

**I.     Statement of Facts and of the Case.**

This case is a *pro se* civil rights action brought by Allison Straker, relating Ms. Straker's 2007 mortgage foreclosure. As a result of the extensive legal proceedings relating to this mortgage, conducted both in state court and in federal court, there is much about this five year old case which is wholly undisputed.

In June of 2006 the plaintiff, Allison Straker, took out two sub-prime mortgage loans through Penn American Mortgage[1] from Freemont Loan & Investment. (Doc. 24.) Deutsche Bank and HomeEq had no involvement in these initial mortgage and real estate transactions, and were not parties to these transactions when they occurred.

---

[1] Penn American is named as a defendant in this action, but there is no indication that it has ever been served in connection with this lawsuit, or entered an appearance in this case.

Instead, Deutsche Bank first acquired an interest in this mortgage in June 2007, one year after Straker entered into the mortgage. (Doc. 74-1, assignment of mortgage.)

At the time that Deutsche Bank acquired this particular mortgage, one year after Straker entered into this agreement, the plaintiff had already defaulted upon her mortgage obligations, and had begun a multi-faceted legal effort to avoid foreclosure. In fact, Straker had defaulted in the monthly mortgage payments on her mortgage beginning in December 2006. (Docs 74-1, 75.) As a result, on May 2, 2007, the mortgagee commenced a mortgage foreclosure action against Straker in the Court of Common Pleas of Monroe County, Pennsylvania. (Id., Deutsche Bank National Trust Company as Trustee v. Allison Straker, No. 3232-CV-2007.) On June 17, 2007, a judgment in mortgage foreclosure in the amount of $161,775.27 was entered against Straker, a writ of execution was issued, and a sheriffs sale was scheduled for October 25, 2007. (Id.)

This sale was later postponed, and stayed, when Straker filed a Chapter 13 Bankruptcy Petition with the United States Bankruptcy Court for the Middle District of Pennsylvania on October 10, 2007, Case No. 07-52636. Straker's first bankruptcy case filing was dismissed three months later, on January 8, 2008. (Id.) Within a month of this dismissal, on January 30, 2008, Straker filed a second Chapter 13 bankruptcy case, No. 08-50260. (Id.) The effect of this second bankruptcy filing was

to, once again, stay the foreclosure proceedings. (Id.) On April 29, 2008, the Bankruptcy Court entered an order granting relief from the automatic stay, and on May 19, 2008, a third writ of execution was issued and the sheriffs sale on this property was rescheduled. (Id.) Straker's second bankruptcy petition was then dismissed on July 8, 2008. (Id.)

On November 13, 2008, Deutsche Bank moved forward with this foreclosure action in state court, filing a Petition to Amend Judgment in that foreclosure action. On December 8, 2008, the court granted this petition and damages were reassessed in favor of Deutsche Bank the amount of $202,318.68. (Id.) Straker actively, and unsuccessfully attempted to challenge this foreclosure judgment in state court, filing a Motion to Set Aside the Court's Order of December 8, 2008, and an Emergency Motion to Stay Sheriffs Sale. (Id.) In response to these filings, the court entered an Order on January 27, 2009, postponing the sheriffs sale until February 26, 2009, and set the matter down for hearing for February 23, 2009. On the date set for this hearing, February 23, 2009, Straker filed a Petition to Open and/or Strike Default Judgment entered in the state mortgage foreclosure action. Two days later, on February 25, 2009, the state court denied this petition to open and further denied Straker's Emergency Motion to Stay Sheriffs Sale. (Id.) The sheriffs sale of this property was then scheduled for February 26, 2009. (Id.) On February 26, 2009, the day of the scheduled sheriffs sale, Straker filed a third Chapter 13 bankruptcy case,

No. 09-01295, again staying the pending sheriffs sale. This last bankruptcy case was converted to a Chapter 7 proceeding on April 5, 2011, and is still pending. (Id.)

At the same time that the plaintiff was engaging in these legal efforts to stave off this mortgage foreclosure, on February 23, 2009, Straker, acting *pro se*, filed a ten-count complaint against Deutsche Bank, MERS, Freemont, HomeEq, Penn American, Fidelity Home Abstract, an additional 1,000 John Doe defendants, alleging fraud, unjust enrichment, civil conspiracy, usury, civil RICO racketeering violations, and violations of the Real Estate Settlement Procedures Act, ("RESPA"), 12 U.S.C. §2605, et seq. (Doc. 1.)

Following five years of litigation all of the defendants in this *pro se* civil action have been dismissed, except for Penn American, Fidelity Home Abstract. As to these two remaining defendants, there is no indication in the extensive record of these proceedings that Straker ever effected service upon either of these defendants. Having failed to make service on these defendants after five years of litigation, it is now recommended that this action be dismissed as to these defendants as well.

## II. Discussion

### A. Dismissal of Defendants Fidelity and Penn American Is Warranted Under Rule 41

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." F. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190. Recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has

frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action as to defendants Fidelity and Penn American. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to serve these defendants, or seek additional time in which to serve these defendants.

Similarly, the second Poulis factor–the prejudice to the adversary caused by the failure to abode by court orders–also calls for dismissal of this action. The plaintiff's failure to address the issue of proper service as to these defendants has resulted in protracted delays in this case, which has remained pending but not properly served, for 5 years, a period far beyond the 120-day service deadline mandated by Rule 4(m) of the Federal Rules of Civil Procedure. This failure of service, wholly frustrates defense preparations in this case, and unreasonably delay the resolution of this action as to these defendants. In such instances dismissal of the case clearly rests in the

discretion of the trial judge. Indeed, such dismissal orders are frequently issued when a court is confronted by a litigant who persistently refuses to timely file and serve pleadings. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007)(failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007)(failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007)(failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate. The failure to timely serve the complaint on these defendants over the past five years has delayed this case, and prejudiced the parties.

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff. At this juncture, when the plaintiff has failed to properly serve this complaint over the span of many years, the court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect a careless disregard for this aspect of the case.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a litigant who will not comply with the rules

or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. In any event we note that the court has previously endeavored in other cases to employ other lesser sanctions with this counsel, but to no avail. See Lease v. Fishel, 712 F.Supp.2d. 359, 371, n. 4 (M.D. Pa. 2010)(collecting cases). Since lesser sanctions have been tried with respect to this counsel, without success, only the sanction of dismissal remains available to the court.

Finally, under Poulis we must consider one other factor, the merits of the parties' claims. In our view, consideration of this factor strongly underscores that this action should be dismissed, since as a legal matter the all of he plaintiff's claims have failed on their merits as to all of the other defendants in this action.

### B. Rule 4 Also Call For Dismissal of This Complaint

Further, dismissal is warranted here because the failure to properly serve defendants Penn American and Fidelity now compels this outcome under the Federal Rules of Civil Procedure. In particular, this result is mandated by Rule 4 of the Federal Rules of Civil Procedure which prescribes the method by which service can be made, and describes how a party must demonstrate proof of service on the record. See F.R. Civ. P., Rule 4(a)-(l). Rule 4 also sets time limits for service, and prescribes

the sanction of dismissal for the failure to make proper and timely service, stating as follows:

> **(m) Time Limit for Service.** If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff[2]--must dismiss the action . . . against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

F. R.Civ. P., Rule 4(m).

The language of Rule 4(m) is both clear and mandatory. Where there is an unjustified and unexcused failure to timely serve a complaint the court "must dismiss the action."

In a case such as this, it is also clear that "the party asserting the validity of service bears the burden of proof on that issue. See Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1083 (1987)." Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993). When the plaintiff fails to carry this burden of proof on the issue of proper and timely service, consistent with Rule 4(m)'s mandate that the "court– on motion or on its own after notice to the plaintiff– must dismiss the action," dismissal of the case is entirely appropriate. Indeed, when a plaintiff does not show good cause for a failure to serve; Beckerman

---

[2]We are through this Report and Recommendation providing the plaintiff with notice as required by Rule 4, and will through them process of permitting the plaintiff to lodge objections to the Report and Recommendation give the plaintiff the opportunity to respond.

v. Susquehanna Township Police, 254 F. App'x 149, 154 (3d Cir. 2007), or fails to make service, despite warnings and requests by the court to address service issues; Foster v. Pennsylvania Human Relations Commission, 157 F. App'x 488, 490 (3d Cir. 2005), the courts have frequently dismissed parties.

These principles control here and call for dismissal of the remaining defendants from this action for failure to make timely and proper service. In this case, the plaintiff has provided no proof of proper service on these defendants more than five years after this action commenced. Given this complete failure of service, and the total failure to provide any good cause for not fulfilling this basic obligation of all litigants, dismissal is called for here. Beckerman v. Susquehanna Township Police, 254 F. App'x 149, 154 (3d Cir. 2007)(affirming dismissal for failure to serve after 122 days where no good cause shown).

Nor could the plaintiff attempt to save this wholly inadequate service by seeking an extension of time in which to serve the complaint at this late date. While the plaintiff has not made such a request, it is apparent that a belated request of this type would be unavailing. In the absence of a showing of good cause, rulings on motions for extension of time in which to serve a complaint rest in the sound discretion of the court. Petrucelli v. Boehringer and Ratzinger, GMBH, 46 F.3d 1298, 1305 (3d Cir. 1995). That discretion is guided, however, by certain basic principles. Foremost among these principles is the concept that:

> [T]he Federal Rules are meant to be applied in such a way as to promote justice. See Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion so that the defendant is not forced to defend against stale claims.

McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir. 1998) Accordingly, where, as here, a failure to make timely service now works an injustice on the opposing party, the proper exercise of discretion calls upon the court to refuse to permit further delays, and to dismiss the complaint. Id.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint with respect to defendant s Penn American and Fidelity be dismissed both for the failure to make timely service under Rule 4 and for the plaintiff's failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local

Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of April 2013.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge